UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EVA FANT,

    Plaintiff,

vs                                                  Case No: 09-12468
                                                            Honorable Victoria A. Roberts

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY, ET AL,

    Defendant.
_____/

**ORDER**

**I.    INTRODUCTION**

Plaintiff Eva Fant ("Fant") brings this action against Defendants Hartford Life and Accident Insurance Company ("Hartford") and L & W, Inc. ("L & W"), under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., to challenge Defendants' denial of her claim for long-term disability ("LTD") benefits. The matter now is before the Court on Plaintiff's Amended Motion for Judgment on the Administrative Record [Dkt #28] and Defendants' Motion for Entry of Judgment Affirming the Denial of Long Term Disability Benefits [Dkt #26]. This Court has jurisdiction under ERISA, 29 U.S.C. § 1132(e), (f). For the reasons stated, Plaintiff's Motion is **DENIED**; Defendants' Motion is **GRANTED**.

**II.    FINDINGS OF FACT**

    **A.  The Parties**

Plaintiff Eva Fant is a 48-year old, married woman. She is a high school

1

graduate and has some college-level training.  Fant was hired by L & W in February 1999 and last worked full time as an Inventory Analyst at L & W Engineering.  Fant's position required her to perform data entry, cycle counts, label making and charting; the physical requirements of her job were sedentary to light.  As an active full-time employee, Fant was a beneficiary under L & W's Group Long Term Disability, Life and Supplemental Life Plan ("the Plan").

Defendant L & W was Fant's employer, as well as the Plan Sponsor and Plan Administrator.  L & W administers the Plan and provides benefits in accordance with the plan provisions.

Defendant Hartford insures L & W employees eligible for LTD benefits under Group Insurance Policy No. GLT-674400 ("the Policy").  Hartford is the designated Claims Fiduciary for benefits provided under the Policy.  The Plan grants Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy."

**B.  The Pertinent Plan Provisions**

The Plan is an employee welfare benefits plan within the meaning of ERISA, 29 U.S.C. § 1002(1)(2)(A).  The Plan provides LTD benefits to eligible employees who become disabled from a covered accidental bodily injury, sickness or pregnancy. *See* AR, p. 46.  Eligible employees include all active full-time associates who are U.S. citizens or U.S. residents, excluding temporary and seasonal associates. *Id.*

The Plan specifically defines a "Disability" or "Disabled" as follows:

"Disability or Disabled" means that during the Elimination Period and for the next 24 months you are prevented by:

2

1. accidental bodily injury;

2. sickness;

3. Mental illness;

4. Substance Abuse; or

5. pregnancy,

from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings.

After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation.

*See* AR, p. 59. Thus, for the first 24 months, to be disabled, a plan participant must only be unable to perform one or more of the essential duties of their occupation. After 24 months, he or she must be unable to perform one or more of the essential duties of any occupation.

Under the Plan, an "Essential Duty" means a duty that:

1. is substantial, not incidental;

2. is fundamental or inherent to the occupation; and

3. cannot be reasonably omitted or changed.

To be at work for the number of hours in your regularly scheduled workweek is also an Essential Duty.

*See* AR, p. 59.

"Your Occupation" is defined as:

your occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job you are performing for a specific employer or at a specific location.

*See* AR, p. 62.

"Any Occupation" is defined as:

> an occupation for which you are qualified by education, training or experience, and that has an earnings potential greater than an amount equal to the lesser of the product of your Indexed Pre-disability Earnings and the Benefit Percentage for which you enrolled and the Maximum Monthly Benefit shown in the Schedule of Insurance.

*See* AR, p. 59.

Plan participants are subject to an "Elimination Period":

> The Elimination Period is the period of time you must be Disabled before benefits become payable. It is the last to be satisfied of the following:
>
> 1. the first 180 consecutive day(s) of any one period of Disability if you are enrolled for Option 1; or
>
> 2. the first 180 consecutive day(s) of any one period of Disability if you are enrolled in Option 2; or
>
> 3. with the exception of benefits required by state law, the expiration of any Employee sponsored short term disability benefits or salary continuation program.

*See* AR, p. 47.

### C. Plaintiff's Injury and Claim for Disability Benefits

Fant treated with Dr. Norbert Roosen ("Dr. Roosen") on September 1, 2004, due to complaints of neck, shoulder, and right arm pain and severe headaches. On January 18, 2005, Fant had an anterior cervical discectomy and fusion surgery at C5-C6 and C6-C7. Despite the surgery, Fant continued to have neck pain and subsequently began treating with Dr. Hi Chul Song ("Dr. Song"), a physical medicine specialist. She also treated in the pain management clinic and used prescription pain killers. On July 21,

4

2006, Fant stopped working due to a diagnosis of cervicalgia.  She applied for and received short term disability benefits from Hartford through January 26, 2007.

Fant applied for LTD benefits through Hartford on December 6, 2006.  Hartford approved Fant's LTD claim on January 4, 2007, with an effective date of January 27, 2007.  Pursuant to the Plan, Fant's monthly benefit was $1,846.00, which represented 60% of her monthly income, coordinated with other income benefits that she received or was entitled to receive.  Under the Plan, Fant was required to and did apply for Social Security Disability ("SSD") benefits.

Fant underwent a second cervical discectomy, a C6-C7 fusion "redo", and a refusion at C6-C7 for pseudoarthrosis on February 22, 2007.  Her diagnoses were chronic neck, shoulder, and right upper extremity pain, pseudoarthrosis at C6-C&, and intractable pain with extensive pain clinic management.

Hartford notified Fant by letter on August 10, 2007, that it received her Payment Options and Reimbursement Agreement Form, in which she requested that Hartford postpone reducing her LTD benefits until SSD benefits were actually rewarded.  The letter also notified Fant that if she received SSD benefits retroactively, she likely would have a sizable overpayment of LTD benefits due to Hartford.

On August 1, 2008, Hartford notified Fant by letter that, under the terms of the Plan, as of January 27, 2009, she would only be entitled to receive continued LTD benefits if her condition prevented her from performing one or more of the essential duties of any occupation.  The letter instructed Fant to complete and return the Work & Education History Form, and have her physician's office complete and return the Attending Physician's Statement to Hartford.

On August 21, 2008, Fant submitted the Work & Educational History Form; she indicated that she was a high school graduate and attended Dorsey Business School for approximately three months. She also indicated that she worked at L & W Engineering since 1997, in the capacity of Shop Packet Administrator (6/97 - 2/7/99) and Shop Packet Administrator/Inventory Analyst (2/8/99 - 7/21/06).

On August 22, 2008, Dr. Song submitted to Hartford an Attending Physician's Statement of Continued Disability ("APS"). Hartford notified Fant by letter on September 5, 2008, that Dr. Song's APS was incomplete because it did not include specific restrictions or limitations for all activities. On September 12, 2008, Dr. Song resubmitted the APS. On September 15, 2008, Hartford notified Fant by letter that Dr. Song's second APS was also incomplete, for the same reasons. On September 19, 2008, Dr. Song again re-submitted the APS. This time, Dr. Song stated that Fant could sit eight hours per day for one hour at a time, could stand one hour for two hours per day, and could walk for a half hour for two hours per day. Dr. Song also stated that Fant could reach at waist or desk level occasionally, and could finger, handle and reach below waist or desk level frequently.

Following an appeal, Fant was awarded SSD benefits on September 19, 2008, with an effective date of January 1, 2007. Fant notified Hartford of the award on November 11, 2008. On November 20, 2008, Hartford notified Fant that as a result of her award of SSD benefits, an LTD benefit overpayment of $17,116.34 had occurred.

On November 28, 2008, Hartford Medical Clinical Case Manager conducted a review of Fant's claim. She determined the restrictions and limitations indicated in Dr. Song's APS were supported by the medical information and should be used to

6

determine whether Fant met the definition of Disability as of January 27, 2009.

On December 5, 2008, a Rehabilitation Case Manager conducted an Employability Analysis Report ("EAR") regarding Plaintiff. Hartford's EAR revealed nine occupations that Plaintiff could perform with her restrictions and limitations, and that met the Plan's requirement of having earnings potential equal to or greater than 60% of Fant's Indexed Pre-Disability Earnings of $1,888.46 per month. The four best occupations included: (1) Insurance Clerk; (2) Wire-Transfer Clerk; (3) Referral clerk, Temporary Help Agency; and (4) Surveillance System Monitor.

On December 9, 2008, Hartford notified Fant that her check in the amount of $17,116.34 had been credited to her account and it reduced her overpayment balance for LTD benefits to zero.

On December 11, 2008, Hartford notified Fant that her LTD claim was denied because she no long met the definition of Disability as noted in the Plan. The decision was based on the policy language and all documents in Fant's file. The letter advised Fant that no benefits would be payable beyond January 26, 2009.

On December 18, 2008, Dr. Song submitted a fourth APS in which he indicated that Fant had permanent restrictions and could never participate in vocational rehabilitation services. Dr. Song restricted Fant to no lifting or carrying, no reaching above shoulder level or at waist or desk level, and no fingering or handling. Dr. Song said Fant could occasionally drive and reach below waist or desk level. Fant's diagnoses included chronic low back pain, neck pain and cervical fusion. In a medical report also dated December 18, 2008, Dr. Song said he mistakenly reported Fant's sitting, standing and walking capabilities on the August 22, 2008 APS.

On January 15, 2009, Hartford received Fant's appeal regarding her claim for long term disability benefits. Hartford conducted a review of Fant's file, which included an independent medical record review by MCCM and its physician specialist, Dr. John Nemunaitis.

On February 26, 2009, Dr. Nemunaitis opined by letter that there was a lack of objective evidence to validate no functional capability, and that the medical documentation provided did not support Dr. Song's opinion of Fant's inability to work. Dr. Nemunaitis further opined that Fant was able to: (1) sit one hour at a time with five minute breaks every hour to allow for stretching, for a total of eight hours per day; (2) stand intermittently one-half hour at a time for a total of two hours per day; (3) walk intermittently, one half hour at a time, for a total of two hours per day; (4) lift/carry 1-10 pounds frequently and 11-20 pounds occasionally; (5) bend at the waist and kneel/crouch occasionally; (6) drive frequently; and (7) reach at the waist/desk level frequently, but above shoulder or below waist/desk level occasionally. Dr. Nemunaitis concluded that Fant "should be able to work eight hours a day five days a week at a sedentary work capacity with the restrictions and limitations as described."

On March 23, 2009, Hartford denied Fant's administrative appeal and upheld the termination of LTD benefits. Hartford's final decision stated that "[b]ased on the contractual provisions of the LTD policy for L & W, Inc., the medical documentation on file and the information received on appeal, you did not meet the Any Occupation definition of Disability as of January 27, 2009."

After exhausting administrative appeals, on June 23, 2009, Fant filed this suit. She moves for Judgment on the Administrative Record. Defendants move for entry of

Judgment affirming the denial of long term disability benefits.

## III.  STANDARD OF REVIEW

A participant or beneficiary of an ERISA plan may bring suit in federal district court to recover benefits allegedly due under the terms of the plan. *See* 29 U.S.C. § 1132(a)(1)(B).  Pursuant to the Sixth Circuit's direction, actions regarding the denial of ERISA benefits are resolved using motions for judgment on the administrative record. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998).

The Court is to: (1) review Defendant's denial of Plaintiff's request for benefits based solely upon the administrative record, (2) apply the applicable standard of review, and (3) render findings of fact and conclusions of law accordingly. *Id.*  The Court is "confined to the record that was before the Plan Administrator," and "may not admit or consider any evidence not presented to the administrator."*Id.*  The pertinent record is not limited solely to the evidence before the administrator at the time of its initial decision, but also includes materials considered during the administrative appeals process. *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991).

District Courts review a denial of benefits challenged under 29 U.S.C. §1132(a)(1)(B) under a *de novo* standard, unless the benefit plan gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989).  When the plan administrator has the discretionary authority to construe and interpret the benefit plan, the standard of review is "arbitrary and capricious." *Id.*

The arbitrary-and-capricious standard "is the least demanding form of judicial

9

review of administrative action." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). This deferential standard requires a court to uphold the benefit determination if the plan administrator offers a reasoned explanation based on the evidence. *University Hospitals v Emerson Electric Co.,* 202 F.3d 839, 846 (6th Cir. 2000). The Court judges reasonableness by whether the plan administrator's interpretation adheres to the language of the plan "as it would be construed by an ordinary person." *Morgan v. SKF USA, Inc.,* 385 F.3d 989, 992 (6th Cir. 2004) (citing *Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health and Welfare Trust Fund,* 203 F.3d 926, 934 (6th Cir. 2000). And, the Court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational [differing] interpretation." *Id.* (citing *Ross v. Pension Plan for Hourly Employees of SKF Indus., Inc.*, 847 F.2d 329, 334 (6th Cir. 1988)).

However, merely because the Court's review must be deferential does not mean it must also be inconsequential. *Moon v. Unum Provident Corp.*, 405 F.3d 373 (6th Cir. 2005). The arbitrary and capricious standard does not require the Court to merely rubber stamp the administrator's decision. *Jones v. Metropolitan Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). The Court must "review the quantity and quality of the medical evidence and the opinions on both sides of the issue." *McDonald*, 347 F.3d at 172.

The Court's deferential review is also guided by another important principle: Where the employer "is authorized both to decide whether an employee is eligible for benefits and to pay those benefits[,] [t]his dual function creates an apparent conflict of interest." *Glenn v. Metropolitan Life Insurance Co.*, 461 F.3d 660, 666 (6th Cir. 2006).

10

"If a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone Tire & Rubber Co.*, 489 U.S. at 115 (quoting *Restatement (Second) of Trusts § 187 cmt. d* (1959)).

Plaintiff argues that the *de novo* standard of review applies because while the Plan grants Hartford the discretion to determine eligibility in accordance with the plan terms, L & W retained authority to decide claims. Plaintiff says L & W could have added a provision granting Hartford the discretion to determine claims, but it did not. Defendants counter that the arbitrary and capricious standard applies because the Plan vests Hartford with total discretion in interpreting the terms of the Policy and making benefits decisions.

In determining whether a plan vests discretionary authority on the plan administrator, the Supreme Court directed lower courts to focus on the breadth of the administrator's power – its authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. at 115.

Here, the Plan designates and names Hartford as the claims fiduciary for benefits provided under the Policy. The Plan grants Hartford full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy. *See* AR, p. 79, 87.

Thus, the Plan language includes both grants of authority. Additionally, the Plan requires participants to submit a "Proof of Loss" which fully describes the nature and extent of the claim. Proof of Loss may be requested throughout a period of Disability. The Plan expressly states that "[a]ll proof submitted must be satisfactory to us." *See* AR,

p. 56-57. Lastly, with regards to when payment checks are issued, the Plan states: "'[w]hen we determine that you are Disabled and eligible to receive benefits, we will pay benefits at the end of each month that you are Disabled." *See* AR, p. 57.

The only reasonable interpretation is that Hartford has authority to determine whether a participant is Disabled in accordance with the Plan language, and thus whether he or she is eligible and entitled to benefits under the Plan. Given that the Plan grants Hartford such discretionary authority, the arbitrary and capricious standard of review applies. See *Noland v. Prudential Ins. Co. Of Am.*, 187 Fed. Appx. 447, 452 (6th Cir. 2006) (finding that policy language stating that the insurance company "determines" whether the conditions of disability have been met grants discretion such that the arbitrary and capricious standard applies).

The Court now addresses whether the Plan Administrator acted arbitrarily and capriciously.

## IV. CONCLUSIONS OF LAW

### A. Denial of Benefits

#### 1. Conflict of Interest

Fant argues that Hartford had a conflict of interest because it was the payor of benefits and the decision maker. "[A] conflict of interest exists for ERISA purposes where the plan administrator evaluates and pays benefits claims, even when the administrator is an insurance company and not the beneficiary's employer." *DeLisle v. Sun Life Assur. Co. of Can.*, 558 F.3d 440, 445 (6th Cir. 2009). Various circumstances affect the weight that courts accord the conflict *Glenn v. Metro. Life Ins. Co.*, 461 F.3d

660, 666 (6th Cir. 2006), aff'd, 128 S. Ct. 2343, 2351, 171 L. Ed. 2d 299 (2008)).

The conflict of interest due to Hartford both determining eligibility for benefits and paying those benefits will be considered by this Court. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381-82 (6th Cir. 2005).

### 2. Social Security Administration Benefits Determination

Second, Fant argues that Hartford failed to give any weight to her award of SSD benefits, despite requiring her to apply for and pay more than $17,000 from the award for LTD overpayments. Defendants say the SSD award was considered, and thus the Court cannot properly consider the SSA determination in deciding whether Defendants' decision was arbitrary and capricious.

While it is true that "an ERISA plan administrator is not bound by an SSA disability determination when reviewing a claim for benefits under an ERISA plan," *Whitaker v. Hartford Life and Acc. Ins. Co.*, 404 F.3d 947, 949, 121 Fed. Appx. 86 (6th Cir. 2005), the mere mention of the decision is not the same as a discussion about why the administrator reached a different conclusion from the SSA. *Bennett v. Kemper Nat'l Servs.*, 514 F.3d 547, 554 (6th Cir. 2007).

"[I]f the plan administrator (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the decision was arbitrary or capricious." *Id.* at 554 (citing *Glenn*, 461 F.3d at 669). The case for arbitrariness is especially strong where failure to explain the deviation from the SSA findings is coupled with some degree of conflicting interests. *DeLisle,* 558 F.3d

at 446 (citing *Glenn*, 128 S. Ct. at 2352).

Hartford's final denial letter says its uses different definitions of disability and different criteria for awarding disability benefits than the SSA. Although Hartford apparently had no information regarding the evidence the SSA relied upon in reaching its decision or how the SSA analyzed that evidence regarding Fant's functional limitations, Hartford's denial does not contain any substantive explanation of why its findings differed from the SSA's. This tends to support a finding that Hartford's decision-making process was arbitrary and capricious.

### 3. Medical Evidence

Fant next argues that Hartford's reliance on a file review in lieu of a physical examination, as well as it failure to take into account the non-objective evidence of her chronic and severe pain and the effect of high dosage narcotic pain drugs, demonstrates that Hartford's decision was arbitrary and capricious. Defendants say Fant's arguments are contravened by the administrative record and the law.

There is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination." *Calvert v. Firstar Fin. Inc.*, 409 F.3d 286, 296 (6th Cir. 2005). However, "the failure to conduct a physical examination--especially where the right to do so is specifically reserved in the plan--may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Id.* at 295. This is particularly true where a reviewer does not explain why it disagrees with an SSA determination. *Bennett*, 514 F.3d at 555.

Here, Hartford specifically reserved the right, at its own expense and as reasonably required, to have participants examined to determine if they are Disabled.

See A.R. 57. It elected instead to conduct a file review. While Dr. Nemunaitis' report notes the absence of an IME report, based on the records he reviewed, Dr. Nemunaitis concluded that Fant could work eight hours per day, five days per week at a sedentary work capacity, with restrictions and limitations similar to those listed in Dr. Song's August 2008 APS.

Dr. Nemunaitis said he based his opinion on a lack of documentation of a neurological deficit or objective functional limitations associated with Fant's pain. Thus, Dr. Nemunaitis impliedly rejected Fant's subjective complaints of pain and its effect on her functional ability. He also did not mention or discuss why his opinion differed from the SSA decision. Hartford, however, addressed both in its final denial, finding that Fant's symptoms were not severe enough to prevent her from performing any occupation.

Fant complains that Hartford did not consider her use of prescription pain drugs and how they limit her ability to work. Dr. Nemunaitis noted that although Fant was maintained on Oxycontin, Neurontin and Naproxen, there was no report of functional impairment associated with them. In the second denial letter, Hartford noted that based on Fant's ability to drive, it did not appear that the medication caused impairments that would prevent her from performing sedentary work. This explanation was reasonable in light of Dr. Song's records, in which Fant denied any drowsiness with her medications and he noted no impairments.

Fant also complains that Defendants failed to give proper weight to Dr. Song's opinion that she was disabled. Defendants argue they were not required to accord special deference to Dr. Song's opinion and were free to credit reliable, conflicting

evidence.

Defendants correctly state that in the ERISA context, a plan administrator need not defer to the opinions of treating physicians. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003). By the same token, it may not arbitrarily repudiate or refuse to consider the opinions of a treating physician. *Id.*

Defendants say they only employed MCMC to review Fant's file because after Hartford's initial denial, Dr. Song changed his findings relating to Fant's restrictions and limitations; they sought to determine whether there was objective evidence to support the changed functional limitation findings.

The Sixth Circuit held it is entirely reasonable for an insurer to request objective evidence of a claimant's functional capacity. *Cooper*, 486 F.3d at 166 (citing *Spangler v. Lockheed Martin Energy Sys.*, Inc., 313 F.3d 356, 361 (6th Cir. 2002)). One method of objective proof of disability is a functional capacity evaluation, a "reliable and objective method of gauging" the extent one can complete work-related tasks. *Cooper*, 486 F.3d at 176.

Review of Dr. Song's records reveals that his opinion was largely based on subjective information from Fant; EMG studies were negative for radiculopathy; a nerve conduction study was normal. Thus, while the Plan does not say that self-reported or "subjective" factors should be accorded less significance than other indicators, it was reasonable for Hartford to consider Dr. Song's post-denial findings, and the absence of an FCE, in crediting Dr. Neumunaitis' opinion over Dr. Song's. This is especially so in light of Dr. Song's admission to Dr. Neumunaitis, that an FCE might be useful to more

objectively substantiate Fant's work capacity.

Next, Fant complains that Hartford's decision to cease benefits was arbitrary and capricious because there was no evidence that her condition improved. Defendants say that even if Fant's condition had not changed, they properly limited their review to whether she was disabled under the "any occupation" standard as of January 27, 2009.

The Court finds Plaintiff's argument unpersuasive. Because no right to receive long-term benefits indefinitely accrued to Fant upon Hartford's initial determination that she was entitled to LTD benefits, *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 274 (5th Cir. 2004), Hartford was entitled to review her eligibility based on the new "any occupation" standard.

In sum, Fant cannot demonstrate that Hartford's review of the medical evidence was arbitrary and capricious.

### 4. Employability Analysis Report

Fant argues that Hartford used the wrong job functions in determining that her job was medium instead of sedentary work. Hartford counters that it recognized Fant's physical limitations in its review of the EAR, and says the relevant inquiry was whether Fant's condition prevented her from performing any occupation, not her occupation.

Under the "any occupation" standard, a plan administrator is "under a duty to make a reasonable inquiry into the types of skills [a claimant] possesses and whether those skills may be used at another job that can pay [him] the same salary range as [his pre-disability earnings]." *McDonald v. Western-Southern Life Insurance Co.*, 347 F.3d 161, 162 (6th Cir. 2003). "Just as a plan administrator must make some inquiry into the nature and transferability of a claimant's job skills, a plan administrator must make some

17

inquiry into whether the jobs selected are ones that the claimant can reasonably perform in light of specific disabilities." *Brooking v. Hartford Life and Accident Ins. Co.*, 167 F. App'x 544, 549 (6th Cir. 2006).

Hartford commissioned the EAR, which concluded that Fant was employable at the sedentary level in at least four identified occupations, considering her skills and physical functionality as well as the prevalence of these occupations in her geographic area. Hartford reasonably relied on this EAR, which utilized the OASYS job matching system. *Cochran v. Hartford Life & Accident Ins. Co.,* 2010 U.S. Dist. LEXIS 4182, at * 24-26 (E.D. Mich. 2010) citing *Richey v. Hartford Life & Accident Ins. Co.*, 608 F. Supp. 2d 1306, 1312 (M.D. Fla. 2009) (recognizing that it was reasonable for the plan administrator to rely on an employability analysis utilizing the OASYS system as evidence that plaintiff was not incapable of working under the "any occupation" standard).

Although Fant argues the EAR listed her job title incorrectly and mischaracterized her work at L & W, she does not deny that she was capable of performing the essential duties of the four occupations identified by Hartford. Those occupations were based on the restrictions and limitations provided by her own treating physician.

In reaching its conclusion that Fant was not disabled under the "any occupation" standard, Hartford fulfilled its obligation to inquire into her skill set, and the transferability of those skills, and to assess her functional capabilities to perform the jobs that it identified. Fant, therefore, cannot demonstrate that Hartford was arbitrary and capricious in relying on the EAR.

**V.      CONCLUSION**

Some of the factors identified by the Sixth Circuit that weigh against Plan Administrators are present: (1) Hartford made both the decision regarding Fant's eligibility and paid her benefits; (2) Hartford disagreed with the SSA's disability determination without sufficient explanation; and (3) Hartford relied almost exclusively on a review of Fant's records as opposed to a physical examination. Nonetheless, Hartford's decision followed a deliberate and principled reasoning process and thorough review of Fant's records. The Court finds the termination of benefits was not arbitrary and capricious.

Plaintiff's Motion is **DENIED**; Defendants' Motion is **GRANTED**.

**IT IS ORDERED.**

    /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: August 20, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 20, 2010.

s/Linda Vertriest
Deputy Clerk